IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Lori Shank, | : | 3:05 CV 07439 |
| Plaintiff, | : | |
| v. | : | **MEMORANDUM DECISION AND ORDER** |
| Mike Johanns, Secretary of Agriculture, | : | |
| Defendant. | : | |

The parties have consented to have the Magistrate enter judgment in this civil rights case filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Pending before the Court is Defendant's Motion to Dismiss and/or in the Alternative, Motion for Summary Judgment (Docket No. 25), to which Plaintiff filed an Opposition under seal (Docket No. 40) and Defendant filed a Reply (Docket No. 41). Also pending are Plaintiff's Motions for Leave Regarding a Discovery Dispute to Depose Witnesses (Docket No. 28) and for Leave to File Exhibit Under Seal (Docket No. 31).

For the reasons that follow, Defendant's Motion to Dismiss is denied, Defendant's Motion for Summary Judgment is granted, the Motion for Leave to Depose Witnesses is denied as moot and the Motion to File Exhibit Under Seal is granted.

## FACTUAL BACKGROUND

Plaintiff is a female resident of Henry County, Ohio. The Conservation Services in the Northwestern Ohio for the Natural Resources (Conservation Services) is a division of the United States Department of Agriculture (Docket No. 1, ¶ 3). Mike Johanns is the Secretary of the United States

Department of Agriculture (Docket No. 1, ¶ 4).

On June 23, 1985, Plaintiff began working at the Conservation Services' office located in Delaware County, Ohio (Docket No. 1, ¶ 1; Docket No. 22, pp. 6, 7, 14). In the capacity of a conservationist, Plaintiff helped farmers improve crop residue cover, manage animal waste and control erosion (Docket No. 22, pp. 7, 9). Plaintiff was employed in Union County, Ohio, in 1986; Logan County, Ohio, in 1987 and Preble County, Ohio, in 1988 (Docket No. 22, p. 16). In 1990, she became a multi-county soil conservationist working in Defiance County (Docket No. 22, pp. 9, 17). She also worked in Bowling Green and provided services in Wood and Hancock Counties (Docket No. 22, p. 17). Later, she also provided services in Wood, Lucas and Sandusky Counties (Docket No. 22, p. 17).

In March 1992, Steven Davis, the Area Resource Conservationist, evaluated Plaintiff's performance, indicating that she needed to do more networking with "key players," be more forceful and participate more in community leadership roles (Docket No. 22, Defendant's Exhibit C, p. 39-4; Docket No. 22, pp. 53-63). In April 1993, Steve Davis opined that there were several areas in which Plaintiff needed serious improvement. Consequently, Mr. Davis recommended that Plaintiff accept a temporary transfer to the Tiffin Field Office or that she accept sole responsibility for Wood County (Docket No. 22, Defendant's Exhibit C, pp. 17-20; Docket No. 22, pp. 20-21, 64-70). Plaintiff was assigned to a temporary detail in the Tiffin Field Office on May 5, 1993, for purposes of receiving training (Docket No. 22, Defendant's Exhibit C, p. 31; Docket No. 22, pp. 75-77). Later that month, Plaintiff, classified then as a GS-11, was denied an in-grade increase in position and salary (Docket No. 22, Defendant's Exhibit C, p. 22). On May 5, 1993, Plaintiff requested consideration for a General Schedule (GS) 9 soil conservationist position for Williams and Fulton Counties (Docket No. 22, Defendant's Exhibit E). In September 1992, Steve Davis reported that Plaintiff's training had been unsuccessful so he placed her

2

on a performance improvement plan (Docket No. 22, p. 79). On October 22, 1993, Plaintiff acquiesced to Steve Davis' placement and accepted a reassignment to a GS-9, Step 10, soil conservationist position in the Bryan Field Office effective October 31, 1993 (Docket No. 22, Defendant's Exhibit C, p. 1; Docket No. 22, p. 21). Plaintiff agreed to be downgraded to maintain her employment and to preserve her spouse's position in Conservation Services (Docket No. 22, pp. 42-43). Although she was downgraded to a GS-9 status, Plaintiff's salary increased (Docket No. 22, p. 27).

On October 3, 1996, the acting state conservationist denied a request to promote Plaintiff to GS-11 on the basis that GS-11 soil conservationist positions in Ohio were not being established (Docket No. 22, Defendant's Exhibit G). On November 7, 1997, Plaintiff requested a desk audit to have her position upgraded to a GS-11. In February 1998, the state conservationist disapproved the request to re-promote Plaintiff to a GS-11 position (Docket No. 22, Defendant's Exhibit H; Docket No. 1, ¶ 9).

In May 2002, Plaintiff contends that she was subjected to sexual harassment by the first level supervisor during a wetland investigation. Mark Jacoby made her feel uncomfortable by sitting beside her in an intimate manner (Docket No. 22, pp. 166-170, 169, 172). Five or six times in 2002, Mark Jacoby placed his foot on the chair next to Plaintiff and his crotch in her face (Docket No. 22, p. 173).

Plaintiff requested a re-promotion to her former GS-11 status with back pay and interest on May 31, 2002 (Docket No. 22, Defendant's Exhibit J). John F. Wilson, Assistant State Conservationist for Field Operations denied the request on July 12, 2002 (Docket No. 22, Defendant's Exhibit K).

In 2003, Plaintiff was spending all of her time in the Defiance office. However, she considered the Bryan Field Office her "home" office. Accordingly, she left her personal papers/items at the Bryan Field Office (Docket No. 22, pp. 198-199). Plaintiff was asked to remove all items from her desk in the office on September 8, 2003, to make room for the new employee (Docket No. 22 p. 197). In October

2003, Plaintiff was again reminded to retrieve her papers (Docket No. 22, p. 200).  Mark Jacoby forwarded an electronic mail message to Plaintiff on February 12, 2004, requesting that she collect her "stored paper" from the Bryan Field Office (Docket No. 22, Defendant's Exhibit S).  In August 2004, Plaintiff discovered that her papers were no longer present at the Bryan Field Office (Docket No. 22, p. 200).

Plaintiff claims that during the course of and as a result of these events, she suffered a miscarriage.  She did not seek medical treatment for stress (Docket No. 22, p. 163).

## PROCEDURAL BACKGROUND

Plaintiff contacted a counselor at Equal Employment Opportunity (EEO) on August 7, 2002.  Plaintiff participated in counseling and a notice of right to file was issued on November 21, 2002.  Plaintiff filed a formal complaint on December 6, 2002.  The formal complaint was accepted for investigation on July 2, 2003 (Docket No. 1, Exhibit A, p. 1; Docket No. 22, Defendant's Exhibit L).  An investigation was conducted from July 19 through September 6, 2003 (Docket No. 22, Defendant's Exhibit N).  The investigation was completed and copy of the report was mailed to Plaintiff on December 19, 2003.  On September 7, 2004, Defendant's Office of Civil Rights rendered a decision in which the director found that Defendant did not discriminate against Plaintiff based on sex when it denied a reassignment (Docket No. 1, Exhibit A).  Plaintiff filed an appeal to the EEOC on October 13, 2004 (Docket No. 40, p. 00015).  The EEOC affirmed the agency's decision on August 19, 2005 (Docket No. 1, Exhibit B).  Plaintiff then filed a timely complaint in this Court (Docket No. 1).

## STANDARDS OF REVIEW

A motion to dismiss filed pursuant to FED. R. CIV. P. 12(b)(1) may attack either the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction.  *DLX, Inc. v. Kentucky,* 381 F.3d

511, 516 (6th Cir. 2004) *cert. denied*, 125 S. Ct. 1733 (2005). When a Rule 12(b)(1) motion attacks the factual basis for jurisdiction, the district court must weigh the evidence and the plaintiff has the burden of proving that the court has jurisdiction over the subject matter. *Id.* If the district court's jurisdictional ruling is based on the resolution of factual disputes, we review those findings under a clearly erroneous standard. Review of the district court's application of the law to the facts is de novo. *RMI Titanium Company v. Westinghouse Electric Corporation,* 78 F.3d 1125, 1135 (6th Cir. 1996).

Whether a district court has correctly dismissed a suit for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), is a question of law, and therefore subject to *de novo* review. *Claybrook v. Birchwell*, 199 F. 3d 350, 353, n. 1 (6th Cir. 2000). The district court must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Id.* When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Id.* (*citing Columbia Natural Resources v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) *cert. denied*, 116 S Ct. 1041 (1996) (citations omitted)). Although the complaint's allegations are construed liberally for the plaintiff, a complaint which does not contain allegations sufficient to support a claim under *any* legal theory must be dismissed. *Id*. A court is not bound to accept alleged legal conclusions or unwarranted factual inferences. *Id.* (*citing Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Matters outside of the pleadings that are presented and not excluded by the court shall be treated as a motion for summary judgment and disposed of as provided under Rule 56.

Following adequate opportunities for discovery and upon adversarial motion, summary judgment under FED. R. CIV. P. 56 must be entered against a plaintiff who has failed to produce evidence sufficient to support each element of his or her *prima facie* case. *Celotex Corporation v. Catrett*, 106 S. Ct. 2548,

2552-2553 (1986). Because sufficiency of the evidence is a question of law, a trial court's grant of summary judgment, like a dismissal under FED. R. CIV. P. 12(b), is subject to plenary scrutiny. *Id.* (*citing Painter v. Robertson*, 185 F.3d 557, 566 (6th Cir. 1999); *Grider v. Abramson*, 180 F.3d 739, 756 n. 7 (6th Cir. 1999) *cert. denied*, 120 S. Ct. 528 (1999)).

## DISCUSSION

Plaintiff presents two claims. First, she was discriminated against based on sex when in 1993 and/or 2002 she was denied (1) a within grade increase, (2) a transfer request and (3) a reassignment. Second, she was retaliated against for filing complaints with EEO. Defendant argues that the incidents occurring in 1993 are not actionable since they were untimely filed with an EEO counselor. Even if the incident that occurred in 2002 is properly before the Court, Plaintiff cannot establish liability of her employer.

I.

Title VII provides the exclusive remedy for federal employees claiming workplace discrimination. *Figueroa v. United States Postal Service*, 422 F. Supp. 2d 866, 880 (6th Cir. 2006) *aff'd* 200 Fed. Appx. 407 (2007) (*citing Brown v. General Services Administration*, 96 S. Ct. 1961, 1966 (1976)). "In permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.' " *Id.* (*citing McFarland v. Henderson,* 307 F.3d 402, 406 (6th Cir. 2002); *quoting Brown,* 96 S. Ct. at 1968; *see also Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992); *Ang v. Procter & Gamble Company,* 932 F.2d 540, 545 (6th Cir. 1991)). Prior to bringing suit under Title VII, a federal government employee must first timely exhaust all administrative remedies. *Id.* (*citing Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991)).

A federal employee who claims to have been the victim of discrimination under Title VII must first bring a grievance to the attention of an EEO counselor of his or her agency within 45 days of the alleged discriminatory act. *Id.* (*citing* 29 C.F.R. § 1614.105(a)(1)). If the matter cannot be resolved informally, the employee must file a formal complaint with the EEO officer within 15 days of receiving notice of the right to file such complaint. *Id.* (*citing* 29 C.F.R. §§ 1614.105(d), 1614.106(a) and (b). Upon notice of a final agency decision, the employee may either file an appeal to the EEOC or a civil action in federal court. *Id.* If the employee elects to file a civil action, he or she must do so within 90 days of receiving notice of the agency's final action, or no sooner than 181 days after filing his formal complaint if the agency has failed to render a decision. *Id.* (*citing* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.408(a) and (b)). If the employee chooses to appeal to the EEOC, he or she must file that appeal within 30 days of the agency's final decision. *Id.* (*citing* 29 C.F.R. § 1614.402(a)). Thereafter, the employee may file suit in federal court within 90 days of receipt of the EEOC's final decision on the appeal, or no less than 181 days after filing the appeal if the EEOC has not issued a final decision. *Id.* (*citing* 29 C.F.R. §§ 1614.408(c) and (d)).

There is no evidence that Plaintiff submitted any claims to the EEO counselor except for those claims arising on May 30, 1993, October 5, 1993, October 12, 1993 and July 15, 2002 (Docket No. 1, Exhibit B). Plaintiff does not dispute that she failed to contact the EEO counselor within the 45 days prescribed by law on those claims arising in 1993. She claims, however, that the 45 days are subject to nine years of equitable tolling.

The Sixth Circuit has held that a federal employee's obligation to consult with an EEO counselor within a set time period as a pre-condition to suit is subject to equitable tolling, waiver, and estoppel. *Steiner v. Henderson,* 354 F. 3d 432, 435-436 (6th Cir. 2003) *cert. denied*, 124 S. Ct. 2049 (2004) (*citing*

*Mitchell v. Chapman,* 343 F. 3d 811, 819-820 (6th Cir. 2003) *cert. denied,* 124 S. Ct. 2908 (2004)). Equitable tolling is "available only in compelling cases which justify a departure from established procedures." *Id.* (*citing Puckett v. Tennessee Eastman Company* 889 F.2d 1481, 1488 (6th Cir. 1989)). The Supreme Court has made it clear that principles of equitable tolling should be applied sparingly. *Id.* (*citing Irwin v. Department of Veteran's Affairs*, 111 S. Ct. 453, 457 (1990)). The burden is on the petitioner to demonstrate that he or she is entitled to equitable tolling. *Allen v. Yukins,* 366 F. 3d 396, 400 (6th Cir. 2004) *cert. denied*, 125 S. Ct. 200 (2004) (*citing McClendon v. Sherman,* 329 F. 3d 490, 494 (6th Cir. 2003)).

Five factors should be considered in determining whether equitable tolling should apply. First, whether the plaintiff had actual notice of the time restraint. Second, whether she had constructive notice of the time restraint. Third, the degree of diligence exerted in pursuing her rights. Fourth, the degree of prejudice to the defendant. Fifth, the reasonableness of plaintiff's ignorance of the time constraint. *Id.* (*citing EEOC v. Kentucky State Police Department,* 80 F.3d 1086, 1094 (6th Cir. 1996) *cert. denied*, 117 S. Ct. 385 (1996); *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988)). These factors are not exclusive bases for equitable tolling. *Id.* A decision to allow equitable tolling is made on a case-by-case basis. *Id.*

Defendant attached a copy of the United States Department of Agriculture's Performance Plan, Progress Review and Appraisal Worksheet with which Plaintiff acknowledged familiarity. The plan covers a period of time from October 1, 1992, through September 20, 1993. Plaintiff acknowledged that she was familiar with the EEO policies addressed by the Plan (Docket No. 22, Defendant's Exhibit C, p. 30). Plaintiff also acknowledged that posters were located in the workplace that indicated EEO counseling was available (Docket No. 22, p. 42). Plaintiff obviously had constructive knowledge of the

limits and procedure for pursuing her legal rights as early as October 1992.

Plaintiff claims that she was intimidated and/or dissuaded from filing a claim with the EEO counselor because she feared reprisal. The only tangible evidence Plaintiff has offered to support her allegations is her impression that her husband's career would be jeopardized or she would be discharged. However, Plaintiff has failed to proffer sufficient objective evidence that creates a genuine issue as to whether she or her husband were actually threatened or suffered from reprisal. The Magistrate finds that Plaintiff's allegations of subjective fear of reprisal are insufficient to toll the time for filing a complaint with the EEO counselor for nine years.

Plaintiff has not presented evidence from which the Magistrate can find that equitable tolling is warranted. Accordingly, the claims arising on May 30, 1993, October 5, 1993 and October 13, 1993, are not actionable in this litigation. The only claim that is actionable is the July 12, 2003, denial of Plaintiff's request for an upgrade to a GS-11 soil conservationist.

Turning to Plaintiff's complaint filed with the EEOC on November 12, 2004, the Magistrate finds that the incidents alleged on June 29, 2001, May 22, 2002, and generally in years 2002, 2003 and October 7, 2003, are also not actionable. At the time Plaintiff filed a charge with the EEO counselor, the incidents were at least two years old and exceeded the 45 day requirement for an aggrieved person to file a charge. Plaintiff proffers no tangible evidence for tolling these time periods. These claims are not actionable. The sole claim that is actionable arises from the letter dated July 12, 2002, in which the Assistant State Conservationist advised Plaintiff that her request for an upgrade to a GS-11 soil conservationist was denied.

II.

The Magistrate must now determine if Defendant's failure to grant Plaintiff's request for an upgrade to GS-11 soil conservationist constitutes a legally cognizable discrimination claim based on gender. Such claims that Defendant discriminated against her by denying her request for an upgrade to a GS-11 soil conservationist do not state a claim for hostile work environment violations. Plaintiff's only actionable claim alleges a disparate treatment violation.

Under 42 U.S.C. § 2000e-2(a)(1), it is unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to terms, conditions, or privileges of employment, because of such individual's sex. Specifically, Title VII forbids sex-based discrimination in employment by favoring men while disadvantaging women *or vice versa. Derungs v. Wal-Mart Stores*, 374 F. 3d 428, 431 (6th Cir. 2004). It also is unlawful for an employer to limit or classify his or her employees or applicants for employment in any way which would deprive or tend to deprive any *individual* of employment opportunities or otherwise adversely affect his or her status as an employee, because of the individual's gender. 42 U.S.C. § 2000e-2(a)(2) (Thomson/West 2007).

A disparate treatment violation occurs when an individual of a protected group is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion under Title VII. *Verhar v. Cole Vision Corporation,* 2006 WL 2882867 (N. D. Ohio 2006) (*citing International Brotherhood of Teamsters v. United States,* 97 S. Ct. 1843, 1854 n. 15 (1977)). A plaintiff seeking to demonstrate disparate treatment bears the burden of establishing discrimination with direct evidence showing intentional discrimination or with circumstantial evidence that creates an inference of discriminatory treatment. *Id.* (*citing Trans World Airlines v. Thurston,* 104 S. Ct. 613, 621 (1985); *McDonnell Douglas Corporation v. Green,* 93 S. Ct. 1817, 1823 (1973)).

"Direct evidence is that evidence which, if believed, requires the conclusion that unlawful

discrimination was at least a motivating factor" in the adverse employment decision at issue. *Id.* (*citing Price Waterhouse v. Hopkins,* 109 S. Ct. 1775, 1788-1789 (1989); *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir. 1999)). Evidence is direct if it would prove the existence of a fact without any inferences or presumptions. *Id.* (*citing Shorter v. Memphis Light, Gas & Water Company,* 252 F. Supp.2d 611, 626 (W. D. Tenn., 2003)). However, isolated and ambiguous comments are insufficient to support a finding of direct discrimination. *Id.* (*citing White v. Columbus Metropolitan Housing Authority,* 429 F.3d 232 (6th Cir. 2005)).

In order to survive summary judgment on a claim of sex discrimination using circumstantial evidence, the plaintiff must produce evidence sufficient to meet her *prima facie* burden under the four-prong test initially developed in *McDonnell Douglas v. Green*, *supra*. *Id.* Under the *McDonnell Douglas* framework, a plaintiff must establish a prima facie case of discrimination or retaliation by showing that: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) despite her qualifications and employment, she suffered an adverse employment action; and (4) she was treated less favorably than a similarly situated non-protected employee. *Id.* (*citing McDonnell Douglas,* 93 S. Ct. at 1824; *Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir.1992)). The defendant can then rebut the presumption of discrimination by articulating a legitimate non-discriminatory reason for failing to hire or promote the plaintiff. *Id.* (*citing Texas Department of Community Affairs v. Burdine,* 101 S. Ct. 1089, 1094 (1981)). If the defendant produces a legitimate non-discriminatory reason, the plaintiff then must prove that the articulated reason is false or pretextual. *Id.* (*citing St. Mary's Honor Center v. Hicks,* 113 S. Ct. 2742, 2746-2748 (1993)).

Plaintiff contends that her only actionable claim emanating from the denial of an upgrade on July 12, 2002, is the culmination of a long history of discriminatory animus exhibited against her by

Defendant. The Magistrate is not persuaded that this letter denying Plaintiff's request for upgrade, standing alone, is sufficient to constitute direct evidence of discrimination. The decision at issue occurred after Plaintiff failed to apply for three separate vacancies that would have upgraded Plaintiff to a GS-11 position. Positions of designated conservationists were abolished under a farm bill. The letter apprising Plaintiff of her options is rather innocuous and does not appear to be written with a bias toward women or Plaintiff because she is a woman. In fact, the first paragraph could easily be understood to mean that Plaintiff was qualified for a GS-11 position. This evidence, if believed, does not lead to a conclusion that unlawful discrimination was a motivating factor in the employer's decision not to offer Plaintiff an upgrade to GS-11 status. Simply, the claim does not provide direct evidence of discrimination.

Plaintiff is a female and thus satisfies the first prong of the circumstantial evidence test. The Assistant State Conservationist's suggestion that Plaintiff should have applied for the position of soil conservationist is evidence that she was at least minimally qualified for the position. Thus, Plaintiff satisfies the second prong of the direct evidence test. Plaintiff cannot satisfy the third prong of the direct evidence test as she dismissed three opportunities to apply for a GS-11 position. When she requested that she be upgraded to GS-11 soil conservationist, there were no positions available. Plaintiff alleged that she was replaced by a male; however, such allegation is not sufficient to establish that she was similarly situated to a non-protected employee. In order to satisfy the fourth prong of the direct evidence test, it is incumbent upon the plaintiff to show that she and the non-protected person who ultimately was hired for the desired position had similar qualifications. *White, supra*, 429 F. 3d at 242 (*citing Williams v. Columbus Metropolitan Housing Authority,* 90 Fed. Appx. 870, 873 (6th Cir. 2004) *cert. denied*, 125 S. Ct. 40 (2004); *Sutherland v. Michigan Department of Treasury,* 344 F.3d 603, 614 (6th Cir. 2003);

*Nguyen v. City of Cleveland,* 229 F.3d 559, 562-63 (6th Cir. 2000)).  Plaintiff has failed to present any evidence regarding the male that succeeded her in the GS-11 position.  Such comparison would be necessary to determine if Plaintiff met the fourth prong of the test.  Without evidence to make an independent comparison of Plaintiff's treatment with that of her similarly situated male co-worker, the Magistrate cannot find that Plaintiff was treated less favorably than the similarly situated non-protected employee.  Plaintiff cannot make a prima facie case for discrimination ; accordingly, summary judgment must be entered against her for failure to produce evidence sufficient to support each element of her *prima facie* case.

Even if Plaintiff had been able to satisfy the four prongs required to make a prima facie case, when the burden shifted, her claim would fail.  Defendant produced a legitimate non-discriminatory reason for failing to upgrade Plaintiff to a GS-11 position.  When the positions became available, Plaintiff failed to request consideration for such positions.  Such explanation would satisfy the burden of production in presenting a legitimate, non-discriminatory reason for deciding not to upgrade Plaintiff to a GS-11 soil conservationist since Plaintiff had not presented evidence that such claim is pretextual or that the true motivation behind this decision is discriminatory or illegitimate.

III.

Plaintiff claims that the destruction of her personal records, including but not limited to training notebooks, handbooks and awards was in retaliation for her participation in the EEO complaint process.  Defendant contends that there is no connection between Plaintiff's gender and the discarding of work materials approximately two years after she initiated EEO contact.

In order to establish a *prima facie* case of retaliation, the plaintiff must show that:  (1) she engaged in activity protected under Title VII; (2) the defendant knew that she engaged in the protected

activity; (3) the defendant subsequently took an adverse, retaliatory action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) the protected activity and the adverse action were causally connected. *Randolph v. Ohio Department of Youth* Services, 453 F. 3d 724, 735 (6th Cir. 2006) (*citing Smith v. City of Salem,* 378 F.3d 566, 570 (6th Cir. 2004); *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 792 (6th Cir. 2000); *see also Burlington Northern & Santa Fe Railway Company v. White,* 126 S. Ct. 2405 (2006)).

Plaintiff can demonstrate that she was engaged in protective activity when she initiated a complaint with the EEO counselor on August 7, 2002. It is undisputed that once Plaintiff filed the formal complaint on December 6, 2002, Defendant was aware that Plaintiff had exercised a protected right. However, Plaintiff cannot establish a temporal proximity between the alleged destruction of her property and the retaliatory conduct or that her supervisor destroyed her property because she filed a complaint with a counselor. Plaintiff has failed to present sufficient evidence to satisfy the third and fourth prongs of the prima facie burden for retaliation.

## **CONCLUSION**

Since this decision is based in large part on evidence presented by both parties outside of the pleadings, the Magistrate considered this case based upon the motion for summary judgment and pursuant to Fed.R.Civ.P.56. Therefore, the Motion to Dismiss is denied. The Motion for Summary Judgment is granted. The Motion for Leave to Depose is denied as moot, the Motion to File Exhibit Under Seal is granted, and the case dismissed.

So ordered.

/s/Vernelis K. Armstrong
United States Magistrate Judge

14

Date: September 17, 2007